IRVING J. LYON & another [1] *vs.* ALFRED H. BLOOMFIELD &
others.[2]

Worcester. February 5, 1969. — April 30, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, &
REARDON, JJ.

*Contempt. Equity Pleading and Practice,* Appeal, Parties, Injunction,
Contempt proceeding, Decree. *Laches. Equity Jurisdiction,* Laches.
*Damages,* For contempt, For trespass.

Failure of the defendants in a suit in equity to challenge in the Superior
Court the standing of the plaintiffs to maintain the suit would entitle
the plaintiffs to a ruling in their favor on that issue upon appeal. [743]
One to whom land was transferred after his predecessor in title had
obtained a final decree permanently enjoining the defendants in a suit
in equity from using that land and a driveway thereon for any purpose
whatsoever had standing to maintain a civil contempt proceeding
against the defendants for wilful violation of the decree and to receive
any fine for contempt assessed for his benefit, even though he was not
a party to the original equity suit. [743]
Subsidiary findings by a master in a suit in equity respecting periodic
use of land and a driveway thereon by the defendants for eighteen
years after a final decree permanently enjoined them from using such
land and driveway for any purpose whatsoever warranted a conclusion
by the trial judge that laches did not bar a contempt proceeding for
wilful violation of the decree against the defendants, who had no
legally protected interest affected by the delay. [743]
Where defendants in a suit in equity violated a final decree therein which
"permanently enjoined [them] from using, causing or permitting to
be used . . . [a] driveway" of the plaintiffs by bringing scrap materials
by truck over the driveway, which were then deposited on land of the
plaintiffs beyond the driveway, and by taking a crane over the drive-
way and loading the materials on the plaintiffs' land for transport to a
factory on the defendants' land, the proper measure of damages of a
fine for civil contempt assessed against the defendants for the benefit
of the plaintiffs was the loss of the potential rental value of their land
beyond the driveway, even though such land was not mentioned in
the decree violated by the defendants. [745]

[1] Standard Acceptance Corporation.
[2] Alfred H. Bloomfield and Harold J. Bloomfield, administrators of the
estate of Benjamin H. Bloomfield otherwise known as Benjamin A. Bloom-
field; Babco Realty, Inc.

A final decree after rescript in a civil contempt proceeding ordering the contemnors to pay a fine to the plaintiffs should provide for counsel fees for them to the date of entry of such decree. [745]

BILL IN EQUITY filed in the Superior Court on May 15, 1944.

A contempt proceeding commenced on August 30, 1965, was heard by *McLaughlin*, J., on a master's report.

*John E. Keenan, Jr.,* for the defendants.

*Richard A. Robinson* for the plaintiffs.

KIRK, J. The defendants appeal from a final decree adjudging them in contempt for the wilful violation of the decree of the Superior Court entered January 9, 1947, and assessing against them a fine in the amount of $18,246.30 for the benefit of the plaintiffs.[3] Our decision in the earlier case is reported. *Harvey Corp.* v. *Bloomfield,* 320 Mass. 326. The present suit was initiated by a petition for attachment for contempt brought by the plaintiff Standard Acceptance Corporation (Standard) in August, 1965. The case was referred to a master on October 30, 1967. His report was confirmed by interlocutory decree from which no appeal was taken.

We summarize the facts found by the master. In 1942 The Harvey Corporation (Harvey) became the owner of real estate in Worcester located on the south side of Cambridge Street and abutting land of the Providence and Worcester Railroad on the east.[4] The lot was further bounded on the west by Kansas Street, on the north by Sherman Street and then on the west and south by the land of others. In all, the tract contained about eight and one-half acres. On May 27, 1943, the northerly portion of this lot was sold by Harvey to Benjamin A. Bloomfield. The Bloomfield purchase was bounded on the north by Cambridge Street, and on the west by Kansas Street to the junction of Kansas and Sherman streets. From this point the boundary ran southeasterly 38.22 feet, southerly 70.35 feet, easterly 30.80 feet, north-

---

[3] It is settled that appeal is the proper method of obtaining review in civil contempt proceedings. *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 348.

[4] An adaptation of the sketch of the locus, 320 Mass. at 328 herewith shows the area currently in controversy.

easterly and northerly by four lines a total of 206.89 feet to the railroad land, then northerly to Cambridge Street. This lot contained 45,401 square feet and there were two factory buildings on it. Adjoining the westerly boundary of the Bloomfield purchase south of Sherman Street was a driveway on the Harvey land which provided access to the rear (south) portion of the Harvey land.

A bill in equity by Harvey against Benjamin A. Bloomfield and Alfred H. Bloomfield concerning the use of this driveway resulted in a final decree entered January 9, 1947, after rescript from this court. The decree is still effective, and provides in part: "[T]he defendants and each of them . . . are permanently enjoined from using, causing or permitting to be used, the driveway and land of the plaintiff [adjoining] the westerly boundary of the premises conveyed by the plaintiff to the defendant, Benjamin A. Bloomfield, for any purpose whatsoever."

Harvey in December, 1962, transferred title to a portion of its tract adjoining the Bloomfield property to Standard. In July, 1966, Standard transferred title to this land to Irving J. Lyon. Lyon was the president and treasurer and sole stockholder of both Harvey and Standard. In November, 1962, Benjamin A. Bloomfield transferred title to his lot to Babco Realty, Inc., a Bloomfield family corporation. About 1964 the Bloomfield scrap iron and metal business, which had formerly been carried on by Benjamin A. Bloomfield and his sons Alfred H., Harold J., David and Paul as partners doing business as B. Bloomfield & Company, was incorporated with the father having 500 shares and each of the sons 100 shares. On May 29, 1966, following the bringing of the petition for contempt, Benjamin A. Bloomfield died and his sons Alfred and Harold were appointed administrators of his estate on August 16, 1966. Before his death, Benjamin A. Bloomfield and his son Alfred were in control of the partnership and both corporations. Alfred now runs the business. In September, 1966, Babco Realty, Inc. leased the premises transferred to it in November, 1962, to B. Bloomfield & Company, Inc.

Since the decree in 1947, and despite persistent requests by Lyon that they desist, the defendants have brought scrap materials by truck over the driveway of the plaintiffs and have deposited this material on land of the plaintiffs located generally south of the defendants' factory and between the defendants' extended westerly lot line and the westerly line of the railroad tracks. (Area "A" on the sketch). Whenever the scrap was needed in the defendants' factory a crane was taken over the driveway and used on the plaintiffs' land to load the material on trucks for transport to the factory. The portions of the plaintiffs' land so used by the defendants varied from time to time over the period from January, 1947, but the use was continuous not in the sense of daily use but in that it occurred periodically between days of nonuse. No permission for such use was ever sought or received, although on more than one occasion the defendants agreed to desist from the use when requested by Lyon. These agreements were not kept.

As a result of this use the sole damage to the plaintiffs was the loss of potential rental of the land on which the scrap materials were stored. The amount of the loss for the full period of use is $10,413.75. Interest on the amount at six per cent is $4,832.55. Attorneys' fees and costs of bringing the petition for contempt are $3,000.

The master found that the conduct of the defendants was a wilful contempt of the 1947 decree. Based on the master's findings the judge held that the defendants were in contempt, imposed as a fine the sum assessed as damages, interest, and counsel fees, and ordered the fine paid for the benefit of the plaintiffs.

The defendants argue that the decree was erroneous because (1) the present plaintiffs were not parties plaintiff in the original equity suit and cannot prosecute this petition for contempt nor receive the benefit of any fine for contempt, (2) the plaintiffs were guilty of laches as matter of law and are barred from prosecuting the petition, (3) the award of damages was based on the rental value of land which was outside the scope of the 1947 decree.

1. The defendants did not challenge in the Superior Court the plaintiffs' standing to maintain the suit. This fact alone, on appeal, would be sufficient grounds for a ruling for the plaintiffs on the issue. See *Henchey* v. *Cox,* 348 Mass. 742, 747. On the merits, moreover, the defendants' contention fails. The plaintiff Lyon is the president, treasurer and sole stockholder of both Harvey (original plaintiff) and Standard. Through Lyon, continuity of a cognizable legal interest in the 1947 decree has been maintained. That decree, in addition to enjoining the defendants from using certain parts of the plaintiffs' land, also dismissed the defendants' counterclaim alleging that they had a right of way by implication over the driveway. The decree affected rights in specific land, and the successors in interest to that land are entitled to the benefit of the decree including the remedy of bringing a petition for contempt. See *Frey* v. *Willey,* 161 Kans. 196. The present plaintiffs as successors in interest would be entitled to the benefit of res judicata, Restatement: Judgments, § 89, and would be entitled to a new injunction restating the previously enjoined use. In principle we see no merit in a rule which would require each subsequent transferee of land which is protected by injunction from invasion by another to renew the injunction against the same defendant in order to protect his rights in the land. The party enjoined by court order from use of land should not be permitted to flout the order merely because the land has been transferred.

2. The question of laches was reported by the master. The final decree implies a determination of no laches by the judge. See *Glazier* v. *Everett,* 224 Mass. 184, 185. His conclusion was clearly warranted on the master's subsidiary findings that Lyon had repeatedly requested the defendants to desist from their use of the plaintiffs' land and that the defendants on more than one occasion had agreed to end the use, but did not do so. No legally protected interest of the defendants has been affected by the delay. There was no error. See *Alvord* v. *Bicknell,* 280 Mass. 567, 572; *Shea* v. *Shea,* 296 Mass. 143, 149.

3. The issue of damages remains. In cases of civil contempt such as the one before us, a fine may be assessed for the benefit of a party who has suffered injury because of the contempt. As are damages in tort, the fine is designed to compensate the injured party for actual losses sustained by reason of the contumacious conduct of the defendant, i.e., for the pecuniary injury caused by the act of disobedience. See *Root* v. *MacDonald,* 260 Mass. 344, 362–363, quoting *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 444; *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 349; *Parker* v. *United States,* 126 F. 2d 370, 379–380 (1st Cir.). "Where a fine is imposed in . . . [a civil] proceeding, it must not exceed the actual loss to the complainant caused by respondent's violation of the decree in the main cause plus complainant's reasonable expenses in the proceedings necessitated in presenting the contempt for the judgment of the court." *Parker* v. *United States,* 153 F. 2d 66, 71 (1st Cir.). See also *Eustace* v. *Lynch,* 80 F. 2d 652, 656 (9th Cir.); *Yanish* v. *Barber,* 232 F. 2d 939, 944 (9th Cir.).

The master made no finding of pecuniary loss suffered by the plaintiffs by reason of the defendants' use of the driveway which was an act in clear disobedience of the decree. He made a finding of pecuniary loss to the plaintiffs by reason of the defendants' use of area "A." The judge used the latter finding as the measure of damages for the contempt in the use of the driveway.

The defendants contend that the judge misapplied the rule of damages. They argue that the contempt consisted solely in the use of the driveway, that this use was ephemeral resulting in no demonstrable injury or damage to the plaintiffs, that no land within the scope of the 1947 decree was used, that area "A" where the defendants stored scrap metal was excluded from the 1947 decree and hence the fine based upon the rental value of area "A" was erroneous.

The refutation of this argument is to be found in this court's opinion in 320 Mass. 326. Commenting on the decree which the rescript ordered to be entered (i.e. the decree now before us), Lummus, J. in the concluding para-

graph of the opinion pointedly wrote: "The rights of the plaintiff are fully protected by the injunction against 'using, causing or permitting to be used the driveway.'" This court obviously treated the driveway as the key to the security of the plaintiffs' land from invasion by the defendants. Obedience to that simple injunction was all that was needed to achieve the desired result. Whatever else was in the decree entered in the Superior Court was in elaboration of the injunction against the use of the driveway and not in restriction of it. The elaboration was in contemplation of past wrongs by the defendants, not in limitation of future protection for the plaintiffs.

The injunction against the use of the driveway was issued in expectation that it would be obeyed, not in anticipation that the surplusage would become a device to evade the clear duty which it imposed. The use of the driveway was a contempt. The use of any part of the plaintiffs' land reached by the driveway was a projection of the contemptuous use of the driveway and is not separable from it. Specifically the use of area "A" by the defendants was an exploitation of the contumacious use of the driveway. It was an aggravation of the contempt for which the contemnors must be fined.

The judge rightly incorporated the rental value of area "A" as damages in assessing the fine. *Fenton* v. *Quaboag Country Club, Inc.* 353 Mass. 534, 539. The decree should provide for counsel fees for the plaintiffs to the final decree after rescript. So providing, it is affirmed with costs. See *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 349–350.

*So ordered.*