NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-657                                      Appeals Court

GREAT WOODS, INC., & another[1]  vs.  KARL D. CLEMMEY.

No. 15-P-657.

Middlesex.     January 15, 2016. – July 26, 2016.

Present:  Green, Wolohojian, & Henry, JJ.

Injunction.  Judgment, Relief from judgment, Consent
     judgment.  Practice, Civil, Relief from judgment, Judicial
     discretion.

Civil action commenced in the Superior Court Department on
November 21, 1994.

After review by this court, 86 Mass. App. Ct. 1115 (2014),
a motion for clarification or for modification or dissolution of
a permanent injunction was heard by Kathe M. Tuttman, J.

Nicholas P. Shapiro (Robert K. Hopkins with him) for the
defendant.
Jeffrey S. King for the intervener.

WOLOHOJIAN, J.  After a series of disruptive and

threatening incidents, Great Woods, Inc. (Great Woods), brought

---

[1] On appeal, Live Nation Worldwide, Inc., filed a motion to
intervene as successor in interest to Great Woods, Inc.  That
motion was allowed by the court.

suit to enjoin Karl Clemmey from entering its property, a large entertainment venue in Mansfield. The suit was resolved when, in 1996, Clemmey agreed to the entry of a permanent injunction that provided:

> "Clemmey, whether acting personally or through any other person acting under his direction or control, is hereby strictly and permanently ORDERED to desist and refrain (1) from entering upon or crossing over the property in Mansfield, Massachusetts, under the control of Great Woods, Inc. (owned by Time Trust, or Sherman Wolfe,) for any reason whatsoever without the express written consent of Great Woods, Inc. and (2) from accosting, harassing, intimidating or threatening any owner, manager, employee or agent of Great Woods, Inc."

Seventeen years later, in 2013, Clemmey moved to "clarify" that Great Woods's successor in interest, Live Nation Worldwide, Inc. (Live Nation), had no right to enforce the permanent injunction. In the alternative, Clemmey moved, pursuant to Mass.R.Civ.P. 60(b)(5), 365 Mass. 828 (1974), to modify or dissolve the injunction based on changed circumstances.[2] A judge of the Superior Court (who was not the judge who entered the original injunction) denied Clemmey's motion and modified the injunction to, in essence, substitute Live Nation for Great Woods. Clemmey appealed, and in an unpublished memorandum and order issued pursuant to our rule 1:28, we vacated the modification order and remanded for findings of fact on the ground that the

---

[2] Clemmey also invoked Mass.R.Civ.P. 60(b)(6); however, the nature of his claim and the relief he sought indicate the motion was properly grounded in subsection (5), not (6).

modification was essentially a new injunction requiring explicit findings.  Great Woods, Inc. v. Clemmey, 86 Mass. App. Ct. 1115 (2014).  On remand, the judge made findings based on materials and affidavits submitted by the parties, and again extended the permanent injunction to Live Nation.[3]  Clemmey appeals, and we now affirm.

Background.  Great Woods sued Clemmey in 1994.  Although the record does not contain the original complaint, it does include Great Woods's amended complaint, which was filed in November 1994.  The amended complaint sought to enjoin Clemmey, who owned adjacent property, from coming onto Great Woods's property and from harassing its employees.  The amended complaint alleged that:

- on December 3, 1993, Clemmey had driven onto Great Woods's property, had repeatedly threatened Bruce Montgomery, Great Woods's general manager, with physical harm in a loud and aggressive way while using obscenities, and had interfered with Montgomery's ability to perform his job;

---

[3] As modified, the injunction reads:

"By order of the Superior Court, the defendant, Karl D. Clemmey, whether acting personally or through any other person acting under his direction or control, is hereby strictly and permanently ORDERED to desist and refrain (1) from entering upon or crossing over property in Mansfield, Massachusetts, under the control of Live Nation Worldwide, Inc., the successor-in-interest to Great Woods, Inc., and being operated as the Xfinity Center, for any reason whatsoever without the express written consent of Live Nation Worldwide, Inc., and (2) from accosting, harassing, intimidating or threatening any owner, manager, employee or agent of Live Nation Worldwide, Inc."

- during the fall and winter of 1993-1994, Clemmey had
  accosted, threatened, and harassed Montgomery on a
  "regular" basis, always using obscene and aggressive
  language;

- on June 7, 1994, Clemmey threatened Montgomery by stating
  that he would use heavy construction equipment to frighten
  Montgomery's wife at home while Montgomery was at work;

- on June 11, 1994, Clemmey physically assaulted Montgomery;

- on June 11, 1994, Clemmey drove a front-end loader across
  the Great Woods property in order to deliberately damage a
  stone wall and silt fence;

- on August 19, 1994, Clemmey twice trespassed on the Great
  Woods property and created disruption; and

- on several occasions during 1993-1994, Clemmey drove his
  front-end loader in a reckless and dangerous manner,
  intentionally putting construction workers near the Great
  Woods property in fear.

  Based on these allegations, the amended complaint sought

that Clemmey be enjoined

- "from entering upon or crossing over the Property more
  particularly described in . . . this complaint,[4] for any
  reason whatsoever without the express written consent of
  Great Woods, Inc. or the Time Trust, except that Karl D.
  Clemmey may enter the Property as a patron or licensee of
  Great Woods, Inc."

  and

- "from accosting, harassing, intimidating, threatening,
  touching, physically or verbally abusing, or in any way
  interfering with employees of Great Woods, Inc."

---

[4] The complaint described the property as being in
Mansfield, and gave the book and page of the transfer
certificate of title and of the deed for the property.  These
documents were attached as exhibits to the complaint.

Great Woods then moved for a preliminary injunction.  Its motion was supported by, among other things, an affidavit from attorney Haskell Kassler, who related an incident during which Clemmey threatened Montgomery in Kassler's presence.  On that occasion, Clemmey stated,

> "One of these nights when you have a full house [at a Great Woods performance] I'm going to take a couple of my dump trucks up to your house, and you know, Bruce, I know where you live.  And I'm going to pull up to the house and flash the lights, blow the whistles, and bang the rear doors on the trucks.  Your wife's going to be scared; she's going to try and get you on the phone and you're not going to be able to leave, and you're going to have to tell her that there's nothing you can do.  And if you do leave, you're going to get fired."

In addition to the Haskell affidavit, Great Woods's preliminary injunction motion was also supported by an affidavit from Montgomery that essentially mirrored the allegations of the amended complaint.

Clemmey opposed the motion for preliminary injunction, but because the record does not contain his papers, we do not know the bases for his opposition.  Regardless, no action was taken on the motion and the litigation appears to have gone into quiescence until November, 1996, when the permanent injunction set forth at the outset of this opinion was entered by agreement of the parties.

Although the permanent injunction entered with Clemmey's agreement, things did not go smoothly thereafter -- at least at

first. In 1997, Clemmey was found in contempt of the permanent injunction after he trespassed onto the Great Woods property. On that occasion, Clemmey -- carrying a baseball bat in the manner of a club -- threatened a security guard and Montgomery. The police were called, and Clemmey returned the bat to his truck. But he returned and challenged, "You tell me where to meet you tonight, anywhere you want. Bring the fucking gloves or we'll do it bare handed. I'll tell you; I'm 55 years old and I got a thousand dollars that says I can kick your fucking ass. . . . Go fuck yourself." Clemmey's manner throughout this episode was hostile, aggressive, and threatening. The security guard's version of events was confirmed by the affidavit of Richard McQuade, another security guard.[5]

Nothing further occurred in the litigation for the next sixteen years, when Clemmey filed his motion for clarification or, in the alternative, for relief under rule 60(b)(5). As we have noted above, the judge ruled that Live Nation, Great Woods's successor in interest, was entitled to the benefit of the permanent injunction. Clemmey appealed, and we vacated the judge's order and remanded for findings. In the memorandum and order pursuant to rule 1:28, the panel stated that the judge on

---

[5] The judge found Clemmey in contempt and allowed Great Woods's application for attorney's fees. Clemmey's appeal ultimately was dismissed with prejudice by agreement of the parties.

remand was not foreclosed from modifying the permanent injunction, provided that "any resulting order shall be unambiguously worded to apply to the property's current owner, and its employees" and that explicit findings be made based on sufficient evidence showing that injunctive relief was appropriate.[6]

On remand, the judge made the following findings, which we accept since they have not been shown to be clearly erroneous. Live Nation, as the subsequent purchaser and operator of the property, has retained many of the operational staff employed by Great Woods, including several employees who were the victims of Clemmey's threatening and harassing conduct during the 1990's. One of those employees is Montgomery, who remains employed by Live Nation. Based on Clemmey's prior conduct, Live Nation's employees remain justifiably fearful of Clemmey and of the risk of abusive behavior toward them in the future. Although Clemmey no longer owns the adjacent property, he continues to hold a beneficial interest in it. Even after having been held in contempt for violating the permanent injunction, Clemmey did not comply with the injunction. Specifically, in 2004, he erected a fence on Live Nation's property. All that said, whenever

---

[6] Given this language in the memorandum and order pursuant to rule 1:28, we disagree with Clemmey's argument that the judge acted outside the scope of the remand when she again ruled that the injunction extended to Live Nation as Great Woods's successor.

Clemmey has requested permission to attend an event at the property, as provided by the permanent injunction, Live Nation has granted it.

Discussion.  Clemmey argues that Live Nation is not entitled to the benefit of the permanent injunction or, in the alternative, that the judge abused her discretion in denying his request to be relieved of its terms.  See Murphy v. Administrator of the Div. of Personnel Admin., 377 Mass. 217, 227 (1979) (rule 60[b] decision "will be set aside only on a clear showing of an abuse of discretion"); Paternity of Cheryl, 434 Mass. 23, 30 (2001) (decision under Mass.R.Dom.Rel.P. 60[b][5] reviewed for abuse of discretion).

We begin by noting that the two components of the injunction must be analyzed separately because one sounds in rem and the other in personam.  The first component (or clause) was designed to protect particular land from invasion by Clemmey:

> "Clemmey . . . is hereby strictly and permanently ORDERED to desist and refrain (1) from entering upon or crossing over the property in Mansfield, Massachusetts, under the control of Great Woods, Inc."

Under Lyon v. Bloomfield, 355 Mass. 738, 743 (1969), a successor in interest to land is entitled to enforce the prospective provisions of an injunction designed to protect that land from invasion by another.  As the court stated in Lyon,

> "we see no merit in a rule which would require each subsequent transferee of land which is protected by

> injunction from invasion by another to renew the injunction against the same defendant in order to protect his rights in the land. The party enjoined by court order from use of land should not be permitted to flout the order merely because the land has been transferred."

Ibid. Here, the first clause of the permanent injunction affected rights in land and, as a result, Live Nation as the successor in interest to that land was entitled to enforce that portion of the injunction.

By contrast, the second clause of the permanent injunction was designed to protect certain people:

> "Clemmey . . . is hereby strictly and permanently ORDERED to desist and refrain . . . (2) from accosting, harassing, intimidating or threatening any owner, manager, employee or agent of Great Woods, Inc."

We have found no case applying the reasoning of Lyon to injunctions designed to protect people rather than land. That said, we see both appeal and logic in applying a Lyon-like rule where, as here, the prospective provisions of an injunction were clearly designed to protect a class of people identified in relationship to a business whose ongoing operations have not meaningfully changed, even though its ownership has been transferred. It would make little sense for a person in this context to be deprived of the protection of a permanent injunction simply because the corporate ownership of his employer changed. Thus, we conclude that Live Nation (as successor to Great Woods) was entitled to enforce the permanent

injunction for the benefit of any person who had been an "owner, manager, employee or agent of Great Woods" at the time the injunction issued.

The question that remains, though, is whether Live Nation is entitled -- and, if so, to what extent -- to enforce the permanent injunction with respect to individuals who were not an "owner, manager, employee or agent of Great Woods" when the injunction issued, but who are currently in one of those roles. As has been noted in a related context, "a judge who issues a permanent order knows that time will pass." MacDonald v. Caruso, 467 Mass. 382, 388 (2014). As a corollary to this proposition, we think it self-evident that the parties and judge anticipated and intended that the permanent injunction -- by its continuing nature -- would not be limited to the people who happened to be associated with Great Woods's operations on the day the injunction issued. The continuing nature of the permanent injunction leads to the natural result, for example, that a person hired by Great Woods one week after the injunction issued would be covered by it. We see no reason why that result would or should be different even if, during that week, ownership of the corporation had transferred to Live Nation.

But the same reasoning cannot be applied ad infinitum. Here, we deal not with the passage of one week but of seventeen years, and Clemmey argues that circumstances have changed such

that the judge abused her discretion in denying his motion to be relieved of the injunction.  We begin with the general proposition that, even though the injunction was entered by agreement of the parties, the court retained the authority, as reflected in rule 60(b)(5), to amend or modify its prospective application.[7]  See Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 378 (1992) ("There is no suggestion in [case law] that a consent decree is not subject to Rule 60[b]"); MacDonald v. Caruso, 467 Mass. at 387; Mitchell v. Mitchell, 62 Mass. App. Ct. 769, 776-777 (2005).  Although relief may be obtained where "it is no longer equitable that the judgment should have prospective application," Mass.R.Civ.P. 60(b)(5), a party may not obtain relief simply "when it is no longer convenient to live with the terms of" the order.  Rufo, 502 U.S. at 383.  A party, such as Clemmey, seeking modification of, or relief from, prospective application of a permanent injunction bears the burden of showing a "significant change in circumstances" warranting revision of the injunction.  Ibid.  MacDonald, supra at 388.  Mitchell, supra at 779.

> "The significant change in circumstances must involve more
> than the mere passage of time, because a judge who issues a
> permanent order knows that time will pass.  Compliance by
> the defendant with the order is also not sufficient alone
> to constitute a significant change in circumstances,

_____

[7] By contrast, a judge may not have authority to amend or modify a consent judgment that has no prospective application. See Thibbitts v. Crowley, 405 Mass. 222, 226-227 (1989).

because a judge who issues a permanent order is entitled to expect that the defendant will comply with the order."

MacDonald, 467 Mass. at 388-389. "However, if there is a significant change in circumstances not foreseen when the last order was issued, the passage of time and compliance with the order may be considered." Id. at 389.

Here, the judge did not abuse her discretion in concluding that Clemmey had not shown an unforeseen significant change in circumstances. Although it is true that many years have passed, largely without incident, they have not been trouble free. Although ownership of the venue has changed, the nature of its operations has not. Moreover, several of the employees who had been the subject of Clemmey's actions in the 1990's remain employed at the venue today, including Montgomery who appears to have been Clemmey's primary target. The evidence permitted the judge to find, as she did, that those employees remained justifiably fearful of Clemmey. In addition, although Clemmey's interest in the adjoining property has changed, it has not disappeared. Finally, Clemmey did not show either that "changed factual conditions make compliance with the [injunction] substantially more onerous," or that the injunction had proven "unworkable because of unforeseen obstacles." Rufo, 502 U.S. at 384. To the contrary, the undisputed facts showed that Clemmey, consistent with the safety valve built into the permanent

injunction, has been allowed to attend any event for which he has requested permission.

For these reasons, the revised order dated February 24, 2015, is affirmed.

<u>So ordered</u>.