## TRACY MACDONALD vs. KEVIN CARUSO.

Plymouth. November 4, 2013. - March 11, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Abuse Prevention. Practice, Civil,* Presumptions and burden of proof. *Evidence,* Presumptions and burden of proof. *Probate Court,* General equity power.

This court concluded that, where a defendant seeks to terminate a permanent abuse prevention order under G. L. c. 209A, the defendant must prove by clear and convincing evidence that, as a result of a significant change in circumstances, it is no longer equitable for the order to continue because the protected party no longer has a reasonable fear of imminent serious physical harm; accordingly, a Probate and Family Court judge did not abuse her discretion in denying the defendant's motion to terminate an abuse prevention order, where the defendant failed to meet this burden of proof, in that he rested his motion solely on his own attestations. [385-394]

COMPLAINT for protection from abuse filed in the Plymouth Division of the Probate and Family Court Department on June 25, 1999.

A motion to terminate an abuse prevention order, filed on May 20, 2011, was heard by *Lisa A. Roberts,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Thomas Arthur Hensley* for the defendant.

*Claire Laporte, Rebecca Cazabon, Stacy Anderson, Benjamin Nardone, & Shrutih Ramlochan-Tewarie,* for The Domestic & Sexual Violence Counsel, Inc., & others, amici curiae, submitted a brief.

GANTS, J. The central issue in this case is the standard to be applied when a defendant seeks to terminate a permanent abuse prevention order under G. L. c. 209A, § 3. We conclude that a defendant who seeks to terminate such an order must show by clear and convincing evidence that, as a result of a significant change in circumstances, it is no longer equitable for the order to continue because the protected party no longer has a reason-

able fear of imminent serious physical harm. Having considered the evidence presented here in support of the defendant's motion to terminate the permanent order, in light of the totality of the circumstances, we conclude that the judge did not abuse her discretion in denying the motion.[1]

*Background.* According to the complaint and affidavit filed by the plaintiff, Tracy MacDonald, on June 25, 1999, in support of her application for an ex parte temporary restraining order under G. L. c. 209A, § 4, against the defendant, Kevin James Caruso, the plaintiff had obtained an "order of protection" in the State of New York against the defendant in March, 1994. She left New York, where she had resided, on November 6, 1995, because the defendant threatened to kill her, and she has not lived in New York since that date.[2] On June 1, 1999, she began receiving "odd mail" in Massachusetts, where she resided, postmarked in the region where the defendant then resided, stating that she had inquired about numerous products; one bore the defendant's handwriting. The defendant also used her social security number and forged her signature to acquire a credit card in her name, and she received a telephone call from the credit card company claiming that she was in default for failing to pay the $2,000 due on the card. On June 20, 1999, the plaintiff saw the defendant when she was on a boat ramp in Plymouth, near where she lived.

A Probate and Family Court judge issued a temporary abuse prevention order directing the defendant to refrain from abusing or contacting the plaintiff, to stay away from her residence in Halifax, and to surrender any firearms or ammunition to the police department in Highland, New York, where the defendant resided. The judge scheduled an adversary hearing for July 9, 1999, the date the temporary order was scheduled to expire. The defendant did not appear at the adversary hearing, and another

---

[1] We acknowledge the joint amicus brief filed by The Domestic & Sexual Violence Council, Inc.; Greater Boston Legal Services; the Women's Bar Association of Massachusetts; DOVE, Inc.; Community Legal Aid; the Massachusetts Law Reform Institute; Community Legal Services and Counseling Center; The Second Step; Justice Center of Southeast Massachusetts LLC; Safe Passage; Professors Maritza Karmely and Christine L. Butler; HarborCOV; and the Foley Hoag Domestic Violence Prevention Project.

[2] The plaintiff asserted that the defendant owned seven handguns.

Probate and Family Court judge issued an initial abuse prevention order for one year, to expire on July 9, 2000.[3]

The defendant was present for the hearing on July 7, 2000, the next designated hearing date, but the order was further extended for one year, to July 6, 2001, with a new hearing scheduled for that expiration date. The defendant again appeared at that hearing, where a permanent order entered, with the judge noting that the surrender of firearms to the police department should also be extended because the defendant presented a likelihood of abuse to the plaintiff. The defendant did not challenge the permanent order on direct appeal.

In May, 2011, the defendant moved to terminate the permanent abuse prevention order.[4] In his verified motion, he attested:

> "[T]here is no further need for the order, because it is now twelve years old, with no alleged or proven violations. He has moved from New York to Park City, Utah, and [p]laintiff now resides in Massachusetts, a separation distance of more than 2,100 miles. He is married since 2004, and happily so. He has retired from the business world, and now seeks to pass his time with various recreational activities that are available to him in his new home, as well as with travel. He has clearly moved on with his life. . . ."

The defendant also noted that the abuse prevention order "continues to affect his life in ways that have nothing to do with [the] [p]laintiff." The collateral consequences he described included extra scrutiny at airports, his disqualification from charitable pursuits that require record checks, and his inability

---

[3]The defendant later moved for a new court hearing to reconsider the one-year extension, contending that he did not understand that he needed to appear in court on July 9, 1999, and that he wished to "answer this order and put this issue to rest." His motion was denied. Because the audio transcripts of the hearings were destroyed after three years, in accordance with court practice, the testimony, if any, on which the court relied in issuing its initial abuse prevention order is not available.

[4]The defendant titled the motion as a "motion to vacate" the abuse prevention order, but he sought only to prevent its prospective application, and did not challenge the grounds on which it was earlier entered. Because the "underlying basis [of the order] was not to be reviewed, nor its validity second guessed," the motion actually sought to terminate, not vacate, the permanent order. See *Iamele* v. *Asselin*, 444 Mass. 734, 742 (2005).

to hunt and to obtain a pistol permit for self-protection. After a hearing, at which the plaintiff did not appear, the judge (who was the same judge who had ordered the second one-year extension after an adversary hearing) denied the defendant's motion, concluding that the defendant had not met his burden of proving, by clear and convincing evidence, that there has been a significant change of circumstances and that the order was unnecessary to protect the plaintiff from harm or the reasonable fear of harm.[5]

The defendant appealed, and in an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed the denial of the defendant's motion. *MacDonald* v. *Caruso*, 82 Mass. App. Ct. 1120 (2012). The court declined the defendant's invitation to modify the standard established in *Mitchell* v. *Mitchell*, 62 Mass. App. Ct. 769, 781 (2005), that an abuse prevention order "should be set aside only in the most extraordinary circumstances and where it has been clearly and convincingly established that the order is no longer needed to protect the victim from harm or the reasonable fear of serious harm." Applying that standard, the court concluded that the judge did not err in finding that the defendant failed to meet this burden. We granted the defendant's application for further appellate review.

*Discussion.* General Laws c. 209A provides "a statutory mechanism by which victims of family or household abuse can enlist the aid of the State to prevent further abuse" through orders prohibiting a defendant from abusing or contacting the victim, or requiring a defendant to stay away from the victim's home or workplace. *Commonwealth* v. *Gordon*, 407 Mass. 340, 344 (1990). See G. L. c. 209A, § 3.[6] The statute, with other abuse prevention statutes, reflects "the Commonwealth's public

---

[5]The record on appeal does not include a transcript of the hearing.

[6]General Laws c. 209A, § 3, protects only "family or household members" from "abuse," with "family or household members" defined to include persons who are married, residing together in the same household, related by blood or marriage, having a child in common, or in a "substantive dating . . . relationship," and "abuse" defined as "the occurrence of one or more of the following acts[:] attempting to cause or causing physical harm; . . . placing another in fear of imminent serious physical harm; . . . causing another to engage involuntarily in sexual relations by force, threat or duress." G. L. c. 209A, § 1.

policy against domestic abuse — preservation of the fundamental human right to be protected from the devastating impact of family violence." *Champagne* v. *Champagne*, 429 Mass. 324, 327 (1999).

A temporary abuse prevention order may issue ex parte for up to ten court business days where a plaintiff shows a "substantial likelihood of immediate danger of abuse." G. L. c. 209A, § 4. After hearing, the temporary order may be extended for no more than one year if the plaintiff proves, by a preponderance of the evidence, that the defendant has caused or attempted to cause physical harm, committed a sexual assault, or placed the plaintiff in reasonable fear of imminent serious physical harm.[7] G. L. c. 209A, § 3. See *Iamele* v. *Asselin*, 444 Mass. 734, 734-735 (2005). On or about the date the initial order expires, the plaintiff may seek to extend the duration of the order "for any additional time necessary to protect the plaintiff" or obtain a permanent order. G. L. c. 209A, § 3. See *Moreno* v. *Naranjo*, 465 Mass. 1001, 1003 (2013) (where relief is warranted, judge owes duty under G. L. c. 209A "to extend . . . abuse prevention orders for a time reasonably necessary for the protection of the plaintiff"); *Crenshaw* v. *Macklin*, 430 Mass. 633, 636 (2000) (duration of extension of initial abuse prevention order is within broad discretion of judge). The standard for obtaining an extension of an abuse prevention order is the same as for an initial order — "most commonly, the plaintiff will need to show a reasonable fear of imminent serious physical harm at the time that relief . . . is sought." *Iamele* v. *Asselin*, *supra* at 735. See *Smith* v. *Jones*, 75 Mass. App. Ct. 540, 544 (2009). No presumption arises from the initial order; "it is the plaintiff's burden to establish that the facts that exist at the time extension of the order is sought justify relief." *Smith* v. *Jones*, 67 Mass. App. Ct. 129, 133-134 (2006). Therefore, a permanent order may not enter unless the plaintiff has twice proved by a

[7]If the defendant does not appear at the hearing, the temporary order "shall continue in effect without further order of the court." G. L. c. 209A, § 4. Here, the temporary order was extended for one year when the defendant failed to appear at the scheduled hearing. A defendant served with an ex parte order advising him of his right to be heard at a scheduled hearing has actual and constructive notice that failure to attend the hearing may result in the extension of the order. *Commonwealth* v. *Delaney*, 425 Mass. 587, 581 (1997).

preponderance of the evidence a reasonable fear of imminent serious physical harm. And where the initial order was one year in duration, the plaintiff must show that the fear of imminent serious physical harm remains reasonable approximately one year after the event that triggered the filing of the c. 209A complaint.

Where, as here, the defendant does not challenge on direct appeal the entry of a permanent abuse prevention order under G. L. c. 209A, it becomes a final equitable order. See *Zullo* v. *Goguen*, 423 Mass. 679, 682 (1996) ("orders under c. 209A are equitable in nature"). But relief from the order may still be obtained where it is "no longer equitable that the judgment should have prospective application." Mass. R. Civ. P. 60 (b) (5), 365 Mass. 828 (1974). See Mass. R. Dom. Rel. P. 60 (provisions identical to Mass. R. Civ. P. 60). In determining what standard to apply to determine when it is "no longer equitable" that a permanent c. 209A order continue to have prospective application, we note that G. L. c. 209A, § 3, provides that a "court may modify its [c. 209A] order at any subsequent time upon motion by either party." In doing so, the Legislature recognized that, given the complicated and dynamic nature of the relationships among "family or household members," and the complex web of personal ties and responsibilities that may still connect them even where there is an order, especially the parenting of children, even a carefully crafted abuse prevention order may require modification as circumstances change. See G. L. c. 209, § 3. The Legislature also recognized that modification may be sought by a plaintiff, by a defendant, or jointly by all parties, and that a motion to modify may seek to revise the terms of an abuse prevention order or to terminate the order itself. Trial Court Guidelines for Judicial Practice: Abuse Prevention Proceedings § 6:04 commentary, at 123 (Sept. 2011) ("Both parties have the right to ask the court to modify an existing order, by either increasing or decreasing the severity of the terms, or by terminating or vacating the order"). We decide here only the standard to apply where a defendant seeks to terminate an order, recognizing that the standard appropriate for such a motion may not be the same where the motion to terminate is brought by the

plaintiff or jointly by all parties, or where the motion seeks only to modify the terms of an order.[8]

A defendant's motion to terminate an order is not a motion to reconsider the entry of a final order, and does not provide an opportunity for a defendant to challenge the underlying basis for the order or to obtain relief from errors correctable on appeal. See *Iamele* v. *Asselin*, 444 Mass. at 742; *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n*, 394 Mass. 233, 236 (1985). Therefore, a defendant bringing such a motion bears the burden of proving a significant change in circumstances since the entry of the order that justifies termination of the order. See *Rufo* v. *Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992) ("a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree"); *United States* v. *Swift & Co.*, 286 U.S. 106, 114-115 (1932) ("a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong"). See also Reporters' Notes to Rule 60, Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 1136 (LexisNexis 2012-2013) (motions to terminate or modify provide "relief from a judgment which was valid and equitable when rendered, but whose prospective application has, because of changed conditions, become inequitable"). See generally 11 C.A. Wright, A.R. Miller, & M.K. Kane, Federal Practice and Procedure § 2863, at 459-460 (2012) ("[rule 60 (b) (5)] does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable").

The significant change in circumstances must involve more than the mere passage of time, because a judge who issues a permanent order knows that time will pass. Compliance by the defendant with the order is also not sufficient alone to constitute a significant change in circumstances, because a judge who

---

[8]We note that the Trial Court Guidelines for Judicial Practice: Abuse Prevention Proceedings § 5.08 (Sept. 2011), provides that, after appropriate inquiry, a plaintiff who has moved to terminate an abuse prevention order "should be permitted to do so, regardless of the reason given or the presence of children."

issues a permanent order is entitled to expect that the defendant will comply with the order. See G. L. c. 209A, § 3 ("The fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for . . . allowing an order to . . . be vacated"). See also *Iamele* v. *Asselin*, 444 Mass. at 738 ("obedience alone is not a ground for refusing an extension of the initial order"). However, if there is a significant change in circumstances not foreseen when the last order was issued, the passage of time and compliance with the order may be considered in determining whether, under the totality of circumstances, a defendant no longer poses a reasonable threat of imminent serious physical harm to the plaintiff.

The defendant contends that his burden should only be to prove by a preponderance of the evidence that the plaintiff no longer has a reasonable fear of imminent serious physical harm from the defendant. We conclude that, where a defendant seeks to terminate an abuse prevention order, the defendant must prove by clear and convincing evidence that the protected party no longer has a reasonable fear of imminent serious physical harm from the defendant, and that continuation of the order would therefore not be equitable. See *Mitchell* v. *Mitchell*, 62 Mass. App. Ct. at 781.

Where the order a defendant seeks to terminate is only one year in duration, as it was in *Mitchell* v. *Mitchell*, 62 Mass. App. Ct. at 770, the defendant will have the opportunity within one year to challenge the continuation of the order at a hearing where the plaintiff will bear the burden of proving a continued reasonable fear of imminent serious physical harm. A motion prematurely to terminate such an order must be supported by more than a preponderance of the evidence to justify the burden, both on the plaintiff and the court, to revisit the order before its expiration. See *id.* at 781 n.22 ("Unwarranted requests to modify may themselves be a form of abuse and create a burden on the courts as well as on the opposing party").

Where the order is permanent, as it is here, a defendant has been found at least twice (here, three times) to pose a reasonable threat of imminent serious physical harm to the plaintiff, and the judge who issued the permanent order found (at least implicitly) that the defendant poses a permanent threat to the

safety of the plaintiff. See Trial Court Guidelines for Judicial Practice: Abuse Prevention Proceedings, *supra* at § 6.09 & commentary ("In determining whether to issue a permanent order or an order for a particular period of years, the court may consider the severity and frequency of the violence involved, threats to do harm in the future and the ages of minor children, and any other relevant facts"). The standard of proof "serves as 'a societal judgment about how the risk of error should be distributed between the litigants.' " *Cruzan* v. *Director, Mo. Dep't of Health*, 497 U.S. 261, 283 (1990), quoting *Santosky* v. *Kramer*, 455 U.S. 745, 755 (1982). Where a defendant has been found over an extended period of time to pose this level of danger to a plaintiff, we conclude that the risk of error should be on the side of the plaintiff and that something more than proof by a preponderance of the evidence is necessary to ensure the plaintiff's safety. Cf. *Moreno* v. *Naranjo*, 465 Mass. at 1002 ("well-established purpose of [G. L. c. 209A] is to protect victims of domestic violence").

The clear and convincing evidence standard is more demanding than the preponderance standard, but we do not accept the defendant's characterization that it is either "amorphous" or "an enormously heavy burden of proof." Clear and convincing evidence is required to hold a litigant in civil contempt, see *Birchall, petitioner*, 454 Mass. 837, 852-853 (2009); to find libel against a public official or public figure, see *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 870 (1975); and to terminate parental rights, see *Adoption of Helen*, 429 Mass. 856, 859 (1999). It is applied every day in our courts and the burden, while demanding, is often met. See, e.g., *Birchall, petitioner, supra*. The standard is less demanding than the proof beyond a reasonable doubt standard required to justify an involuntary civil commitment, either because the respondent poses a danger to himself or to others, see *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 275 (1978), or because of sexual dangerousness. See G. L. c. 123A, § 14 (*d*).

In determining whether a defendant has met the clear and convincing evidence standard, a judge must determine whether the defendant has proven a significant change in circumstances since

the order was issued, and whether, under the totality of the circumstances, the plaintiff, without the protection of an order of abuse prevention, would no longer reasonably fear imminent serious physical harm from the defendant. Here, the defendant has identified five changes in circumstances that he contends justify termination of the order: (1) he has moved from New York to Utah, (2) he has been happily married since 2004, (3) he has retired from the "business world," (4) more than twelve years have passed since the issuance of the permanent order, and (5) there have been no "alleged or proven violations" of the order. We have already noted that the fourth and fifth alleged changes do not suffice alone to constitute a significant change of circumstances. As to the third alleged change, we are not persuaded that retirement from employment constitutes a relevant change in circumstances that reasonably may affect the risk posed by a defendant. The first and second alleged changes, however, may support a finding of a significant change of circumstances, in that the defendant's relocation from New York to Utah increases the cost and effort required for the defendant to see the plaintiff in Massachusetts, and his long-standing marriage may suggest that, as he contends, he has "moved on with his life" and no longer is so emotionally connected to the plaintiff as to pose a risk to her.

Assuming that the defendant has met his burden of proving a significant change in circumstances, we turn to whether the judge abused her discretion in finding that the defendant failed to meet his burden of proving by clear and convincing evidence that he no longer poses a reasonable threat of imminent serious physical harm to the plaintiff. The defendant asks us to give meaning to the plaintiff's failure to appear at the hearing or otherwise to object to his motion to terminate. We decline to do so. A judge should certainly give serious consideration to the plaintiff's position regarding a defendant's motion to terminate, regardless of whether the plaintiff opposes or supports the motion, but a judge may not give meaning to a plaintiff's silence or failure to appear, because a judge cannot know whether silence reflects acquiescence in the termination or continued fear of the defendant. See *Champagne* v. *Champagne*, 429 Mass. at 327 n.2. Moreover, a plaintiff shoulders no burden at a termination hearing and is entitled to rest on the finality of the order.

The defendant also asks us to consider the collateral consequences that a defendant may suffer from an abuse prevention order, including his inability to obtain a permit to carry firearms. We decline to do so. Where a defendant has failed to meet his burden to terminate an abuse prevention order, the order shall not be terminated, regardless of how onerous the collateral consequences, because the only relevant issue is the safety of the plaintiff. See *Moreno* v. *Naranjo*, 465 Mass. at 1003 (judge may not "rely on considerations irrelevant to the plaintiff's need for protection" in deciding whether to extend abuse prevention order). Where that burden has been met, the order should be terminated, because its prospective application is no longer needed to protect the plaintiff, and even if there were no collateral consequences, it is no longer equitable for the order to remain in force. Therefore, the collateral consequences arising from the order are not relevant to the judge's decision regarding termination of the order. Cf. *id.* at 1002 (nothing in G. L. c. 209A authorizes judge to limit duration of abuse prevention order "out of concern for the defendant's visitation rights").

Addressing the relevant changes of circumstances, the additional distance between the defendant's and the plaintiff's residences may significantly diminish the reasonable fear of imminent serious physical harm if the abuse prevention order had issued when the plaintiff and defendant worked or resided in close proximity to each other, and the defendant had harmed or threatened harm to the plaintiff when their paths crossed. See *Iamele* v. *Asselin*, 444 Mass. at 740 (in evaluating risk of future abuse, judge should consider "the likelihood that the parties will encounter one another in the course of their usual activities"). But the orders in this case issued when the plaintiff resided in Massachusetts and the defendant resided in New York, so there was already considerable distance between the two. That the defendant would now need to travel approximately six hours by airplane rather than approximately six hours by car to see the plaintiff bears on the likelihood of his seeing her, and the expense and effort to do so, but by itself does not mean that he could not engage in the same conduct from afar that triggered issuance of the initial order.

The most significant change of circumstance in this case is

the defendant's marriage to another woman since 2004, considered together with his undisputed compliance with the abuse prevention orders, which corroborates his contention that he has "moved on with his life." But the defendant rested his motion to terminate solely on his own attestations in his verified motion. He did not submit an affidavit from the chief of police or the keeper of the records of his city in Utah attesting that the police had no record of any allegations of domestic abuse, or submit the New York and Utah equivalents of the Massachusetts criminal offender record information (CORI) and Statewide registry of civil restraining orders records to show the absence of arrests or convictions or other restraining orders. To prove that he had truly "moved on with his life," the defendant in this case needed to demonstrate not only that he has moved on to another relationship but also that he has "moved on" from his history of domestic abuse and retaliation.[9] Because the defendant bears the burden of demonstrating, by clear and convincing evidence, that he no longer reasonably poses a threat to the plaintiff, the judge did not abuse her discretion in finding that the defendant's attestations alone fell short of meeting this burden.

---

[9] In *Freeman* v. *Freeman*, 169 Wash. 2d 664, 673 (2010), the Supreme Court of Washington adopted a New Jersey court's eleven factors as "a sensible framework for analyzing whether . . . a restrained party will commit a future act of domestic violence." The factors are "(1) whether the victim has consented to lift the order, (2) the victim's fear of the restrained party, (3) present nature of the relationship between parties, (4) whether the restrained party has any contempt convictions for violating the order, (5) restrained party's alcohol and drug involvement, if any, (6) other violent acts on the part of the restrained party, (7) whether the restrained party has engaged in domestic violence counseling, (8) age and health of the restrained party, (9) whether the victim is acting in good faith to oppose the motion, (10) whether other jurisdictions have entered any protection orders against the restrained party, and (11) other factors deemed relevant by the court." *Id.*, citing *Carfagno* v. *Carfagno*, 288 N.J. Super. 424, 435 (1995). We do not adopt any specific checklist of factors, recognizing that the relevant factors will differ depending on the circumstances of the case, and that the evaluation of risk must rest on the totality of the circumstances. See *Iamele* v. *Asselin*, 444 Mass. at 741 ("totality of the conditions" governs evaluation of future risk of domestic abuse). But we note that two of the factors adopted by the Washington Supreme Court concern other acts of violence and other restraining orders. In different circumstances, affidavits regarding the successful completion of mental health, anger management, or substance abuse counselling might be relevant in determining whether a defendant has met his burden of proof.

Although we conclude that the judge here, on this record, did not abuse her discretion in denying the defendant's motion to terminate the abuse prevention order, we leave open the possibility that the defendant might be able to meet his burden if he were to renew his motion with a stronger evidentiary foundation. The standard of clear and convincing evidence in these matters is properly demanding, but not insurmountable if supported by a persuasive evidentiary record demonstrating that a defendant no longer poses a reasonable risk of committing serious physical harm. Because we do not believe that a defendant's possibility of winning a motion to terminate an abuse prevention order is illusory, or that a judge can never abuse her discretion by denying such a motion, we direct judges to place their findings of fact regarding such motions on the record, regardless of whether the motion is allowed or denied, to assist an appellate court in reviewing the determination on appeal. See *Mitchell* v. *Mitchell*, 62 Mass. App. Ct. at 781 ("if the judge determines that it is appropriate to allow a motion to vacate or terminate a c. 209A order, the decision should be supported by findings of fact").

*Conclusion.* We conclude that, on this record, the judge did not abuse her discretion in finding that the defendant failed to meet his burden of proving by clear and convincing evidence that, as a result of a significant change in circumstances, the plaintiff no longer has a reasonable fear of imminent serious physical harm. We, therefore, affirm the judge's denial of the defendant's motion to terminate the abuse prevention order.

*So ordered.*