NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1587                                      Appeals Court


L.L.  vs.  M.M.


No. 17-P-1587.

Barnstable.     October 11, 2018. - March 7, 2019.

Present:  Green, C.J., Hanlon, & Maldonado, JJ.



Abuse Prevention.  Protective Order.  Due Process of Law, Abuse
     prevention, Burden of proof.  Assault and Battery by Means
     of a Dangerous Weapon.  Practice, Civil, Judicial
     discretion, Burden of proof.


     Complaint for protection from abuse filed in the Orleans
Division of the District Court Department on September 23, 2000.

     A motion to terminate an abuse prevention order, filed on
September 6, 2016, was heard by Robert A. Welsh, III, J.


     Genevieve K. Henrique for the defendant.
     L.L., pro se.


     HANLON, J.  After a hearing, a District Court judge denied

the defendant's motion to terminate a permanent abuse prevention

order issued pursuant to G. L. c. 209A (209A order).[1]  The

_____

     [1] The defendant's motion was titled "motion to vacate";
however, in this court, he clarified his position, stating that

defendant appeals, arguing that the judge abused his discretion because, in the defendant's view, he proved that there had been a significant change of circumstances and, as a result, the plaintiff no longer had a reasonable fear of physical harm from him.  For that reason, he contends that it is no longer equitable for the 209A order to remain in place.  We affirm.

Background.  This case began with an emergency ex parte 209A order issued on September 23, 2000, a Saturday.  See G. L. c. 209A, § 5.  The judge ordered the defendant not to abuse the plaintiff, not to contact her directly or indirectly, and to stay one hundred yards away from her and her children.  He also ordered the defendant to immediately surrender to the local police department all "guns, ammunition, gun licenses and FID [firearms identification] cards."  An order providing essentially the same relief was issued ex parte by another judge in the District Court on the following Monday, September 25, 2000, and a hearing after notice was scheduled for October 2, 2000.

At the time, the parties had been married for approximately two and one-half years.  According to the plaintiff's affidavit

---

"the relief the defendant sought was not to vacate the original order but to terminate the current order due to a significant change of circumstances since the order had been made permanent."  See MacDonald v. Caruso, 467 Mass. 382, 384 n.4 (2014).

filed in support of her complaint,[2] the defendant had threatened her in the past "that if [she] divorced him he would see [her] dead first. He ha[d] also been physically and sexually abusive of [her] in the time [they] were living together." On Saturday, September 23, the affidavit continued, the defendant stopped by the plaintiff's house and became argumentative with her and her older child. The plaintiff told him to leave, but he refused "and continued to argue and yell. Finally when both [of her] children, ages 7 and 11, and [she] told him to get out and never come back[,] he became even more irate and grabbed a dozen roses out of a vase," hit her in the face with them, and then left the house. She went outside and threw the roses at his car. "He then spun tires and gravel (with many neighborhood children present at [the] side of [the] driveway) and went out of the driveway." The plaintiff then returned to her house, "[a]t which time he returned into [the] driveway and aimed his vehicle at [her] 11 year old daughter and tried to run her over. This was witnessed by <u>many</u> children and adults across from [her] home." She continued, "We are all quite afraid of what he may

---

   [2] Neither party provided this court with the affidavit; we obtained a copy from the District Court. We note that, as the defendant was the appellant, it was his obligation to include the affidavit in the record. See Mass. R. A. P. 18 (a), as amended, 425 Mass. 1602 (1997). "[A] plaintiff shoulders no burden at a termination hearing and is entitled to rest on the finality of the order." <u>MacDonald</u>, 467 Mass. at 391.

attempt to do, if he has lost it enough to retaliate against a child with a vehicle."

On the same day as the ex parte hearing, September 25, 2000, the defendant was arraigned in the District Court on charges of assault by means of a dangerous weapon and assault and battery by means of a dangerous weapon.[3]  He was served in hand with a copy of the 209A order and a return of service was filed with the court on September 26, 2000.

At the hearing after notice on October 2, 2000, the 209A order was extended until October 2, 2001; the face of the order indicates that the defendant was present, and the "no contact" provision of the order was amended to provide that "th[e] defendant remain 300 feet away from the plaintiff," as opposed to the one hundred yards provision specified in the emergency 209A order.  In addition, the judge specified that "the order

---

[3] The defendant later pleaded guilty to the charge of assault by means of a dangerous weapon, and he was placed on probation for one year.  The police report contained in the record reveals that both the plaintiff's eleven year old daughter and a neighbor corroborated the plaintiff's account of what had happened.  The daughter told the police officer that she, too, had thrown flowers at the defendant's vehicle as he was backing up and that he then "put the vehicle into drive and drove at her.  She state[d] she had to jump behind a tree or he would have hit her."  A witness from across the street said that he saw the girl throw flowers at the vehicle and "he then observed the vehicle pull forward and drive at the young girl.  The girl ran behind a tree.  [The witness stated] that if the girl did not move as fast as she did the vehicle would have struck her."

shall not be construed so as to prevent either party from using the ways of the town to enter or [leave] his or her home." On October 2, 2001, with both parties present, the 209A order was extended without modification until April 2, 2002.[4] On April 2, 2002, the 209A order was amended to reflect a change in the plaintiff's name, and the order was made permanent.[5]

Approximately fourteen years later, on September 6, 2016, the defendant filed the motion at issue here, seeking to terminate the 209A order because of a change of circumstances. In his affidavit in support of the motion, the defendant represented that he had had no contact with the plaintiff since

---

[4] The record also contains the defendant's Court Activity Record Information (CARI), which reveals that, in addition to his conviction of assault by means of a dangerous weapon, the defendant was convicted of five violations of the 209A order based on incidents occurring in 2000 and 2001, and shown on the CARI report with dates of October 6, 2000, October 17, 2000, and October 2, 2001. On the three cases related to the October 6, 2000 date, the convictions were placed on file with the defendant's consent. Similarly, the conviction related to the October 17, 2000 date was also placed on file. For the last conviction related to the October 2, 2001 CARI entry, the defendant received a sentence of thirty days in the house of correction. There are no subsequent criminal charges on the defendant's Massachusetts CARI report. In addition, the record appendix contains a criminal history from the National Crime Information Center (NCIC), showing no subsequent arrests recorded from anywhere in the United States.

[5] The defendant was not present at the April 2, 2002, hearing; however, as we have indicated, he had been served in hand with a copy of the order setting that date for the hearing. In addition, the return of service in the record indicates that he received a copy of the 209A order "in hand" the next day, April 3, 2002.

"on or about August, 2001."  He now lives in Nevada and has been married to another woman since 2010.  His current wife is from the Philippines and she has dual citizenship; the couple travel to the Philippines at least once a year.  He is "stopped by U.S. Customs and Border Officials almost every trip" and "detained for approximately 45 minutes."  Further, the defendant is employed as a commercial truck driver for a company that "performs a majority of its work on Federal Government worksites and for Prisons."  As a result of the 209A order, neither the defendant nor the company that employs him is "allowed to work on certain" government or prison worksites.[6]

As noted, both parties were present for a hearing on the defendant's motion on September 22, 2016.  The defendant was represented by counsel; the plaintiff appeared pro se, accompanied by a civil advocate.  The parties have stipulated that "[t]he transcript prepared from the . . . tape in this

---

[6] The defendant's representations are corroborated in the record appendix by a copy of a Nevada commercial driver's license in his name; a Nevada marriage certificate indicating his 2010 marriage to his current wife; a pay stub, indicating his employment with the trucking company; and a letter on the trucking company's stationery, from the owner of the company, dated September 12, 2016, reciting that the defendant has been a "valued employee" for six years and reiterating the fact that the defendant has been refused entrance to Federal property, including military bases, and to State penitentiary property because of the outstanding 209A order.  The letter also states that the issue is a "burden on [the] company" and "costly" when the defendant cannot do that work.

matter begins with the proceedings already in progress and is approximately 4 pages in length." Unfortunately, the transcript begins near the end of the plaintiff's testimony, and the defendant's lawyer repeatedly interrupted the testimony that appears in the transcript. However, the transcript reveals that the plaintiff did testify to the following at least: "[T]hat piece of paper is the only thing that keeps me from looking over my shoulder 24/7; and it has for 14 years, and I'd like to keep it that way." When the judge asked, "You're still in fear of him?" the plaintiff responded, "Unh-huh, because I don't know what he would do next. I never do. He violated the order numerous times for years, and it took a long time to get -- and then, now I'm here again when I shouldn't be here." At that point, the defendant's lawyer interrupted to say, among other things, that "some of the violations . . . that was before it became permanent." The plaintiff responded that the defendant had screamed and yelled at her outside the court house following an earlier hearing "for being in here and taking him to court" and that "[h]e would follow us numerous times, everywhere we went."

The five-page stipulation submitted by the parties "as to the unrecorded portion of the electronic recording of the hearing" was approved by the judge. The only references to the plaintiff in the stipulation state that she appeared pro se,

accompanied by a representative from "Independence House," and that she "did oppose the Motion and stated that she was still in fear of [the defendant] and was always looking over her shoulder."  The stipulation also reiterates that the plaintiff "informed [the judge] that she was still in fear for her life." The balance of the stipulation contains the defense attorney's representations and argument about the defendant's situation and the inconvenience that the permanent 209A order causes him. Neither the defendant nor his current wife testified at the hearing.

Discussion.  The issue is whether the judge abused his discretion when he denied the defendant's motion to terminate the 209A order.  We therefore ask whether "the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

A defendant who seeks to terminate a permanent 209A order "must show by clear and convincing evidence that, as a result of a significant change in circumstances, it is no longer equitable for the order to continue because the protected party no longer has a reasonable fear of imminent serious physical harm." MacDonald v. Caruso, 467 Mass. 382, 382-383 (2014).  The court's

analysis in MacDonald provides a framework for our consideration of whether the defendant has met that burden here.

At first glance, the facts are similar to those in MacDonald. There, the defendant argued that the 209A order was twelve years old; he had moved from New York to Utah; he had remarried in 2004 and retired from "the business world, and . . . clearly moved on with his life." MacDonald, 467 Mass. at 384. Here, the 209A order is eighteen years old; the defendant has moved to Nevada and remarried. He contends that he has moved on with his life.

In MacDonald, the court agreed that the distance between the parties was a relevant consideration, citing Iamele v. Asselin, 444 Mass. 734, 740 (2005), for the principle that "in evaluating [the] risk of future abuse, [the] judge should consider 'the likelihood that the parties will encounter one another in the course of their usual activities.'" MacDonald, 467 Mass. at 392, quoting Iamele, supra. The court also agreed that the defendant's marriage to another woman for ten years corroborated his contention that he had "moved on with his life." Id. at 393.

However, the court in MacDonald, 467 Mass. at 393, also stressed that "the defendant rested his motion to terminate solely on his own attestations in his verified motion. He did not submit an affidavit from the chief of police or the keeper

of the records of his city in Utah attesting that the police had no record of any allegations of domestic abuse, or submit the New York and Utah equivalents of the Massachusetts criminal offender record information (CORI) and Statewide registry of civil restraining orders records to show the absence of arrests or convictions or other restraining orders.  To prove that he had truly 'moved on with his life,' the defendant in this case needed to demonstrate not only that he has moved on to another relationship but that he has 'moved on' from his history of domestic abuse and retaliation."

In the present case, while the defendant did submit criminal record information from both Massachusetts and NCIC, there is no affidavit from local police, and no affidavit or testimony from his current wife.  On this record, it is impossible to say whether the defendant has resolved his problems with domestic abuse or merely become more adept at hiding them.  Also, as noted, the defendant himself did not testify or submit to cross-examination on the issue of whether he had been abusive in subsequent relationships; the judge would have been warranted in drawing a negative inference from that failure.  See Singh v. Capuano, 468 Mass. 328, 333 (2014); Frizado v. Frizado, 420 Mass. 592, 596 (1995); M.G. v. G.A., 94 Mass. App. Ct. 139, 143 (2018).

Further, in MacDonald, 467 Mass. at 388-389, the court specifically refused to draw an inference from the passage of time, stating that "[t]he significant change in circumstances must involve more than the mere passage of time, because a judge who issues a permanent order knows that time will pass. Compliance by the defendant with the order is also not sufficient alone to constitute a significant change in circumstances, because a judge who issues a permanent order is entitled to expect that the defendant will comply with the order. See G. L. c. 209A, § 3 ('The fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for . . . allowing an order to . . . be vacated')." Of course, in this case, at least in the time immediately following the issuance of the 209A order, there were repeated violations.

In addition, while in MacDonald the plaintiff did not appear at the hearing on the defendant's motion to terminate the 209A order,[7] here the plaintiff did appear to oppose the motion and did so strenuously. Despite the meager record, that opposition, and her continued fear for her safety, come through

---

[7] Even so, the court in MacDonald, 467 Mass. at 391, declined to weigh that fact in the defendant's favor, reiterating that "a judge cannot know whether silence reflects acquiescence in the termination or continued fear of the defendant."

clearly.  Where that fear is based on an incident in which the defendant attempted to strike the plaintiff's daughter with a motor vehicle and then proceeded to violate a 209A order five times, we cannot say that the judge erred in finding that fear reasonable.

In MacDonald, 467 Mass. at 392, the court specifically declined to consider the collateral consequences that a defendant may suffer from an abuse prevention order.  The defendant in this case argues that the collateral consequences to him are considerable, and he supports that argument with a letter from his employer and other documents; on this record, we accept that representation as accurate.  However, in MacDonald, the court stressed that collateral consequences "are not relevant to the judge's decision regarding termination of the order."  Id.  "Where a defendant has failed to meet his burden to terminate an abuse prevention order, the order shall not be terminated, regardless of how onerous the collateral consequences, because the only relevant issue is the safety of the plaintiff.  See Moreno v. Naranjo, 465 Mass. [1001,] 1003 [2013] (judge may not 'rely on considerations irrelevant to the plaintiff's need for protection' in deciding whether to extend abuse prevention order).  Where that burden has been met, the order should be terminated, because its prospective application is no longer needed to protect the plaintiff, and even if there

were no collateral consequences, it is no longer equitable for the order to remain in force . . . . Cf. id. at 1002 (nothing in G. L. c. 209A authorizes judge to limit duration of abuse prevention order 'out of concern for the defendant's visitation rights')." MacDonald, supra.

Finally, the court in MacDonald referred in a footnote to factors deemed relevant by other jurisdictions in considering similar motions and suggested some additional factors that might be relevant to the issue of whether the defendant had met his burden. These include "the restrained party's alcohol and drug involvement, if any . . . [the] age and health of the restrained party . . . [and] whether the victim is acting in good faith to oppose the motion." MacDonald, 367 Mass. at 393 n.9. The court observed that, in some circumstances "affidavits regarding the successful completion of mental health . . . or substance abuse counselling might be relevant in determining whether a defendant has met his burden of proof." Id. Another relevant consideration might be an affidavit attesting to successful completion of an intimate partner abuse education program. Nothing in this record indicates that any of these factors support the defendant's argument.

On the record before it, the court in MacDonald, 367 Mass. at 394, concluded that "the judge did not abuse her discretion in finding that the defendant failed to meet his burden of

proving by clear and convincing evidence that, as a result of a significant change in circumstances, the plaintiff no longer ha[d] a reasonable fear of imminent serious physical harm. [The court], therefore, affirm[ed] the judge's denial of the defendant's motion to terminate the abuse prevention order." So too here, in sum, the defendant has shown that he has moved away and remarried and that there have been no violations of the 209A order since the five violations in 2000 and 2001. On that showing, without more, and in light of the plaintiff's evident continuing reasonable fear of abuse by the defendant, we cannot say that the judge abused his discretion when he denied the motion to terminate the 209A order. We therefore affirm.

<u>So ordered</u>.