NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-312                                       Appeals Court

CORDELIA C.  vs.  STEVEN S.[1]


No. 18-P-312.

Bristol.       November 2, 2018. - July 22, 2019.

Present:  Wolohojian, Hanlon, & Ditkoff, JJ.


Abuse Prevention.  Protective Order.  Practice, Civil,
     Presumptions and burden of proof, Standard of proof.


     Complaint for protection from abuse filed in the New
Bedford Division of the District Court Department on November 7,
2016.

     A motion to modify an abuse prevention order was heard by
Bernadette L. Sabra, J.


     Margaret Drew for the plaintiff.
     Kevin D. Ainsworth for the defendant.


     HANLON, J.  The plaintiff appeals from a District Court

order modifying the terms of a G. L. c. 209A abuse prevention

order.  The issue presented, essentially, is the standard of

proof demanded when a party seeks to modify an existing

_____

     [1] The parties' names are pseudonyms.

restraining order.  As we explain below, we conclude that the answer to that question depends upon the status of the existing order, the nature of the modification sought, and, in some cases, whether the plaintiff or the defendant seeks the modification.

The modification in this case permitted the defendant, the plaintiff's father (father), to reside in the basement apartment in a house he had sold to the plaintiff (daughter) thirteen years earlier.  The modification also ordered the father to "arrange for separate utilities" and to refrain from entering the daughter's upstairs unit.  On the facts of this case, we see no abuse of discretion in the modification judge's decision to modify it as she did.

Background.  Both the underlying facts and the procedural background here are somewhat confusing.  The father was eighty-seven years old at the time of the original abuse prevention order in 2016.  In 2003, the daughter bought the house at 14 Milton Street, South Dartmouth (house), from the father by assuming the existing mortgage.  The house had two units -- a basement apartment and an upstairs unit.  According to the father, the parties orally agreed that he could live in the basement apartment rent-free for the rest of his life.  The daughter lived in the upstairs unit.  On August 12, 2016, the daughter served the father with a notice to quit.  When the

father refused to leave the house, the daughter initiated eviction proceedings in the Housing Court.  On August 3, 2017, a judge of the Housing Court entered judgment for the father on the daughter's complaint for possession.[2]

Meanwhile, on November 7, 2016, the parties had sought and received mutual abuse prevention orders.  Only the daughter's order against the father is at issue here, but we discuss the father's order against the daughter to give a complete picture. The daughter obtained an order against the father, ordering him not to abuse her, not to contact her, and to stay at least twenty-five yards away from her; paragraph three of the order was crossed out, and the father was not ordered to leave and stay away from the house.  At the same time, the father obtained his own order against the daughter, in which the judge ordered the daughter not to abuse the father, not to contact him, to stay at least twenty-five yards away from him, and to vacate and stay away from the house in compliance with paragraph three of the order.[3]  Both parties were present when the orders were issued for one year, that is, until November 6, 2017.  A

---

[2] The Housing Court decision was included in the record appendix.  "We may take judicial notice of the court papers filed in related cases."  U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 425 n.8 (2014).

[3] The judge also issued the statutorily required orders that each defendant not possess a gun, ammunition, a firearms identification card, or a license to carry a firearm.

notation on each of the orders states, "BOTH PARTIES PRESENT/BOTH PARTIES ARRESTED." See note 7, infra. On June 6, 2017, the father's order was modified at the daughter's request, vacating paragraph three and permitting her to return to live in the house, that is, in the same premises as the father.[4]

The events that led to the issuance of the mutual restraining orders on November 7, 2016, are somewhat unclear[5] and, if the judge made the required findings for issuing mutual orders, they do not appear in this record.[6] As a result, we are left with few facts on which to base our decision.

According to a memorandum the daughter filed in support of her application for the extension of the abuse prevention order, "[t]he order against [the father] was entered after police witnessed [the father] pushing [the daughter] out the front

---

[4] The father was not present at that June 6, 2017 hearing.

[5] Neither party provided this court with the affidavit filed in support of their respective requests for an abuse prevention order. We note that it was the daughter's obligation, as the appellant, at least to provide the affidavit she had filed in support of her own complaint against the father. See Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019); L.L. v. M.M., 95 Mass. App. Ct. 18, 19 n.2 (2019).

[6] See Sommi v. Ayer, 51 Mass. App. Ct. 207, 210-211 (2001) ("Because the orders were 'mutual,' the judge . . . was required to make specific written findings of fact. It is obvious that the purpose of specific written findings is to ensure that the judge will carefully consider the evidence presented to determine who is the real victim and aggressor in an abusive relationship and if a mutual order is warranted").

door."  There are other conclusory and very general allegations of a history of the father abusing the daughter, but there is nothing specific, and each allegation was made as a representation of counsel.[7,8]  When the parties appeared before the court on November 6, 2016, the mutual orders were issued, with, as described, supra, the daughter ordered to vacate and stay away from the house.  In December, 2016, after the mutual abuse prevention orders issued, the father was served with an eviction complaint that was the subject of the Housing Court action, described supra.

On November 6, 2017, at the extension hearing that had been scheduled the year before, the daughter was present and the

---

[7] The daughter's brief in this court includes, without any record citation, an allegation that the father "threw [her] out of the front door of the premises and more recently picked up a 2 x 4 and rammed the door of the premises in an attempt to gain access."  The brief also contains an allegation that the father abused the daughter when she was a child.

[8] As to the father's allegations against the daughter, there is even less.  According to his lawyer, after the daughter "filed an eviction complaint against him," the father sought an abuse prevention order against the daughter; an ex parte order issued, but was vacated on November 4, 2016, when the judge declined to extend it.  The father returned to the house; the daughter was there, and "[t]he police ended up coming there. They ended up arresting the both of them on November 4, 2016." In fairness, as noted, the father's order against the daughter is not at issue here, but the underlying facts would have been helpful.

father was not.[9]  When the father did not appear at the extension

hearing, the judge extended the daughter's order against the

father to November 5, 2018, modifying it by adding paragraph

three to the original order, thus ordering the father to vacate

and stay away from the house.

The father filed a motion to vacate the extension order

immediately after he became aware of it, and there was a hearing

on his motion on November 14, 2017, at which both parties were

present.[10]  Following that hearing, the modification judge denied

the father's motion to vacate the entire order, but, treating it

as a motion to modify the extended order, modified it to permit

the father to return to the basement apartment of the house.

The judge left in place the no abuse and no contact portions of

the extended order.[11]  In addition, the father was ordered "to

arrange for separate utilities for his apartment" and to refrain

_____

[9] The father was in Florida on November 6, 2017, and claims
that he did not know about the extension hearing, despite the
fact that both orders indicated that the next hearing date was
November 6, 2017.  The father's order against the daughter
apparently was terminated when the father did not appear by the
end of the court day on November 6, 2017.

[10] According to his attorney, the father returned from
Florida on November 8, 2017.  As a result of the November 6,
2017, extended order, the father could not gain entry to the
house.  He attempted to enter by force, and the police
responded, ordering him to leave.

[11] However, in paragraph two, the no contact portion of the
order, the judge reduced the distance for the father to stay
away from twenty-five yards to three yards.

from entering the daughter's upstairs unit.  The daughter appeals from this modification of the extended order.

Standard of review.  We review the judge's decision to modify the order for an abuse of discretion and ask whether "the judge made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Modification of the c. 209A order.  General Laws c. 209A, § 3, provides that "[t]he court may modify its order at any subsequent time upon motion by either party."  See Guidelines for Judicial Practice:  Abuse Prevention Proceedings (Guidelines) § 6:04 (2011).  A plaintiff who wishes to terminate an existing order, or to vacate certain parts of an existing order, thus reducing a restriction on the defendant, has no burden of proof.  See Guidelines § 5:08.  Although the Guidelines suggest that the judge should ask certain questions and perhaps refer the plaintiff to other resources, it is also clear that the plaintiff presumptively should be permitted to terminate the order "regardless of the reason given or the presence of children."[12]  Id.

---

[12] The Guidelines caution that, if the judge determines "that terminating the abuse prevention order will place minor children in danger of physical harm or other abuse, the judge

When an abuse prevention order is first considered, the plaintiff has the burden of proving, "by a preponderance of the evidence, that the defendant has caused or attempted to cause physical harm, committed a sexual assault, or placed the plaintiff in reasonable fear of imminent serious physical harm." MacDonald v. Caruso, 467 Mass. 382, 386 (2014).  It follows from that principle that a plaintiff who seeks to modify an existing restraining order in a way that would impose an additional burden on the defendant has the burden of proving by a preponderance of the evidence that the modification is warranted to fulfill the purpose of the order, that is, to protect the plaintiff from abuse by the defendant.

By contrast, a defendant who seeks to terminate an existing order "must show by clear and convincing evidence that, as a result of a significant change in circumstances, it is no longer equitable for the order to continue because the protected party no longer has a reasonable fear of imminent serious physical harm."  MacDonald, 467 Mass. at 382-383.  For that reason, it follows that a defendant who wishes to modify an existing order in a way that changes it substantively to reduce the restraints upon the defendant also has the burden of showing by clear and convincing evidence that the provision at issue is no longer

should advise the plaintiff that a report pursuant to G. L. c. 119, § 51A will be filed immediately."  Guidelines § 5:08.

necessary to protect the plaintiff from reasonable fear of "imminent serious physical harm" or other abuse.  Id.

This case is something of a hybrid.  Initially, mutual orders were issued and the daughter was ordered to vacate the house.  During the term of the original orders, she succeeded in modifying the father's order against her to permit her to return to the house, where the father was either living or, at a minimum, had access.  At the November 6, 2017 extension hearing, only the daughter was present in court.  It was at that time that the father first was ordered to vacate the house.  As the daughter argues, the father had notice of the date of that hearing when the original orders were issued.  However, she does not dispute that he was in Florida at the time of the extension hearing and that upon his return, when he learned that the order had been modified, he immediately sought to vacate that order. Those facts distinguish this case from MacDonald, where the defendant was present for two extension hearings until a permanent order issued and then waited almost ten years before seeking to terminate it.  MacDonald, 467 Mass. at 384.  In L.L. v. M.M. 95 Mass. App. Ct. 18, 20-21, 25 (2019), this court followed MacDonald's teaching in a similar situation -- that is, we affirmed the denial of the defendant's motion to terminate a permanent order when the defendant, who was present when the

permanent order was issued originally and did not appeal it, returned almost fourteen years later seeking to terminate it.

Here, by failing to attend the extension hearing, the father accepted that the order would be extended, and he forfeited any right to complain about the extension. On the other hand, he had no notice or reason to expect that the restrictions imposed by the extended order would be enlarged beyond those in the original order. Accordingly, the father was entitled to be heard, solely on the issue of enlarging the protections in the order when he requested such a hearing promptly upon learning of the enlargement. For that reason, in the present case, it was the daughter, the plaintiff here, who bore the burden to support the new provision. Cf. F.W.T. v. F.T., 93 Mass. App. Ct. 376, 379 (2018); M.M. v. Doucette, 92 Mass. App. Ct. 32, 38-39 (2017). Nothing that was presented at either the extension hearing on November 6, 2017, or the motion to vacate hearing on November 14, 2017, supported the contention that the modification was warranted to protect the daughter from abuse by the father, rather than to accomplish her desire to evict him. Accordingly, the modification judge properly modified the extended order.

> Order dated November 14, 2017, affirmed.